No. 33,028

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, *Plaintiff*, v. THE CITY OF HUTCHINSON et al., *Defendants*.

(62 P. 2d 865)

Opinion filed December 12, 1936.

*Clarence V. Beck,* attorney general, *Theo. F. Varner,* assistant attorney general, and *Wesley E. Brown,* county attorney, for the plaintiff.

*Alva L. Fenn,* city attorney, and *Albert S. Teed,* assistant city attorney, for the defendants.

The opinion of the court was delivered by

BURCH, C. J.: The action is one of quo warranto commenced by the attorney general in this court, to oust the city from unauthorized exercise of corporate power. The cause is submitted on an agreed statement of facts.

The city entered into a contract with the Universal Signal Company, a private corporation, which authorized the signal company to install traffic signals in the streets at designated places, without expense to the city. Pursuant to the contract, more than 300 signals have been installed. The signals, which are of metal, are two-faced. On one side, measuring approximately fifteen inches by ten inches, are words designed to regulate traffic: "Stop," "Slow," "School." The letters are four inches high and are three and one half inches above the pavement level. On the other side of the device, which is sloping, is a plate twelve by fourteen inches in size, used for advertising which the signal company sells to advertisers for a dollar a sign per month. The "Stop" and "Slow" signals are placed about two feet from the pedestrian crosswalks, and face oncoming traffic. The "School" signals are placed in the proper lane, facing traffic, from ten to twenty feet from the crosswalks.

The signal company was granted privilege to maintain the structures for the period of eight years. Throughout the period, the signal company is to make repairs, replace reflectors, and paint the signals four times a year. The city is to remove rubbish from or around the signals.

It needs no witness to tell what the effect of these structures is on street traffic. An automobile driver approaches a street and is met by the word, "Stop." He must obey and does obey. He looks to the right, to the left, and in front of him, seeking to improve opportunity to proceed, and is confronted with a structure in the adjoining lane, where a traffic signal is usually placed. There are words upon the structure. Words facing him at such a place are put there to be read, and due care requires that he ascertain what the words are, in order that he may conduct himself accordingly. He must do this, whatever the condition of traffic, of light, and of weather, and whatever his own need or desire to clear the crossing.

Having expended the necessary effort, he learns that "Benjamin Sells for Less," or he is directed to "Heine for Hot Dogs." (Illustrations not taken from the agreed statement of facts.) The result is, the free movement of traffic is impeded, and the structure, definitely and permanently appropriating to private use a portion of the traveled way, is a purpresture.

In justification of its conduct, the city refers to the express power granted to it by the legislature to regulate the construction and location of billboards, signs, and other appliances, on public streets and property adjacent thereto (R. S. 13-406), and contends the subject of permitting the structures to occupy the streets is one of legislative discretion on the part of the city with which a court may not interfere. The court does not read this statute as authorizing the city to permit the construction of billboards in the traveled portion of streets. Leaving that subject at one side, the contention of the city relating to legislative discretion is true only when the regulation has some public object in view. Streets are for public use, and the regulative power of the city is exercisable in the interest of the general welfare only.

The advertising sides of the structures have no relation to the public interest whatever. They are maintained by a private corporation, for its own private, pecuniary profit. They are designed to divert attention of street users from street uses, and without any relation to public safety, convenience or welfare, they invade the public interest in two ways: by encroachment and by obstruction to traffic.

That the encroachment is not very large does not affect the principle. (See *National Sign Co. v. Douglas County Comm'rs*, 126 Kan. 81, 83, 266 Pac. 927.) The power to license is lacking, whether the structure be several inches or several feet high (*City of Emporia v. Humphrey*, 132 Kan. 682, 687, 297 Pac. 712), and the obstruction to travel is so substantial that it produces a neat income to the installing company.

The structures are defended as in the interest of the public welfare, in that the traffic side costs the city nothing, and the city cannot afford to install proper traffic signals. The city has no power to buy its traffic signals by farming out the streets to private uses, in a manner which obstructs free use for traffic purposes.

Because the private features of these structures in the streets have no function to perform in the nature of traffic regulation, and

bear no relation to the public welfare in the use of traffic ways, the court has authority to interfere. The subject of arbitrary or capricious exercise of power is not considered. The action of the city was not taken in a field over which the city has legislative power, and the structures are unlawfully maintained.

The writial is allowed.

The writ is allowed.