O'FALLON DEVELOPMENT COMPANY, INC., Plaintiff-Appellant, *v.* THE CITY OF O'FALLON *et al.*, Defendants-Appellees.

Fifth District   No. 75-531

Opinion filed November 3, 1976.

Fleming & Fleming, of O'Fallon, for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee St. Clair Square, Inc.

Delmar O. Koebel, of Lebanon, for appellee City of O'Fallon.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff-appellant, O'Fallon Development Company, Inc., appeals from an order of the Circuit Court of St. Clair County dismissing its complaint against the City of O'Fallon and St. Clair Square, Inc., defendants-appellees.

The complaint alleged that the City of O'Fallon has contractual arrangements with the City of Fairview Heights, its neighbor, whereby it provides water to the residents and businesses located within the municipal boundaries of Fairview Heights, which does not maintain a water department or furnish like services.

St. Clair Square, Inc., owns a shopping center located within the corporate boundaries of Fairview Heights. When the shopping center was constructed, water lines were installed and a water tower was erected adjacent to the shopping center on the property of the shopping center. The water tower and the real estate on which it is situated, were subsequently acquired by the City of O'Fallon which owns in fee the real estate and the water tower, located thereon, and holds the same as municipal property. Ill. Rev. Stat. 1975, ch. 24, pars. 2—2—12, 11—125— 2, 11—126—3; *People ex rel. City of Salem v. McMackin,* 53 Ill. 2d 347, 291 N.E.2d 807 (1972).

At the time the water tower was acquired by the City of O'Fallon the words "St. Clair Square" and a commercial emblem with which the shopping center is identified were painted on the sides of the water tower. These writings and markings have remained on the tower subsequent to its acquisition by the City of O'Fallon, although no compensation has been paid to the city by St. Clair Square, nor has any other business entity been given an opportunity to advertise in a similar fashion.

The complaint further alleged that the plaintiff, O'Fallon Development Company, Inc., is the owner of the Southview Shopping Center located within the City of O'Fallon and that the two shopping centers, located in close proximity, are competitors and compete for the same customers; that the words and lettering on the water tower are highly visible to potential customers of both shopping centers; and that plaintiff has lost customers and potential patrons resulting in loss of business necessitating the closing of several stores in its shopping center because of the advertising by defendant, St. Clair Square, which plaintiff concludes is unlawfully placed upon the public property of the City of O'Fallon and which the latter improperly allows to remain upon its property. Plaintiff

seeks both an injunction requiring the City of O'Fallon to remove these writings and emblems and damages.

Plaintiff contends that its complaint states a cause of action based on section 11—80—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—80—8), on section 13 of article IV of the Illinois Constitution of 1970, and on section 1(a) of article VIII of the Illinois Constitution of 1970. The City of O'Fallon contends that section 11—80—8 of the Illinois Municipal Code is not applicable and that the City of O'Fallon in the use and operation of its water works facilities acts in a proprietary as distinguished from a governmental capacity and may engage in activities upon the same basis as a private corporation. St. Clair Square, Inc., while adopting the City of O'Fallon's arguments supporting the judgment of the trial court, contends that the complaint seeks no relief against it, as it is not the owner of the water tower and has no power to control its use, and that the judgment in its favor must be affirmed.

■■ The motion to dismiss admits the truth of all allegations of fact well pleaded, and the cause of action should not be dismissed on the pleadings "unless it appears that no set of facts can be proved which will entitle the pleader to relief." *Dinn Oil Co. v. Hanover Insurance Co.*, 87 Ill. App. 2d 206, 211, 230 N.E.2d 702, 705 (5th Dist. 1967).

The initial complaint filed by plaintiff was dismissed on motion of the City of O'Fallon and plaintiff was given leave to file an amended complaint which was subsequently dismissed on October 28, 1975, on motion of both defendants. The order of the trial court merely recited that the motion to dismiss the amended complaint was allowed and that all counts thereof were dismissed. Notice of appeal was filed on December 1, 1975, and we thereafter entered a rule on appellant to show cause why the appeal should not be dismissed for lack of a final appealable order. Appellant responded by filing in this court an amended order of the trial court which not only dismissed plaintiff's amended complaint but dismissed its cause of action.

We need not decide whether the amended dismissal order filed after filing notice of appeal should be considered as curing any defect in the original order, *nunc pro tunc*, or whether the trial court had jurisdiction to enter an amended order subsequent to filing notice of appeal, as we find the order of dismissal entered October 28, 1975, to be a final appealable order.

■■ Generally, an order dismissing a complaint is not a final, appealable order unless the cause of action is also dismissed with no right to the plaintiff to plead over by filing an amended complaint. *Doner v. Phoenix Joint Stock Land Bank*, 381 Ill. 106, 109, 45 N.E.2d 20, 22 (1942).

We believe, however, that the better view is to look to the substance of what was actually decided by the dismissal order, rather than the form of

the order, and if the effect is to decide that the basic allegations of the pleader, however stated, are insufficient as a matter of law to state a cause of action, then an order dismissing the pleading is a final, appealable order terminating the litigation between the parties. (*Peach v. Peach*, 73 Ill. App. 2d 72, 218 N.E.2d 504 (2d Dist. 1966); *Pratt v. Baker*, 79 Ill. App. 2d 479, 223 N.E.2d 865 (2d Dist. 1967); *Martin v. Masini*, 90 Ill. App. 2d 348, 232 N.E.2d 770 (2d Dist. 1967).) Here the motion to dismiss the amended complaint was not based on any defect in the allegations of fact pleaded or any technical deficiency in the pleading that could be cured by amendment; rather, it challenged its right to recover as a matter of law. (*Lakatos v. Prudence Mutual Casualty Co.*, 113 Ill. App. 2d 310, 252 N.E.2d 123 (1st Dist. 1969).) We hold that the substance of the order of December 1, 1975, resulted in a termination of the litigation between the parties and was a final, appealable order.

■■ While the distinction is not important to a decision in this case, we would note that the City of O'Fallon is not a home rule municipality. Home rule cities are granted certain powers by the Illinois Constitution of 1970. Section 6(a) of article VII of the Constitution grants to home rule municipalities authority to exercise powers and perform any function pertaining to its government and affairs. Municipalities which are not home rule units continue to derive governmental powers from express legislative grants from the General Assembly or Constitution. (*Appeal Board v. United States Steel Corp.*, 48 Ill. 2d 575, 272 N.E.2d 46 (1971); compare Constitutional Commentaries, Ill. Ann. Stat., art. VII, §§6(a) and 7 (Smith-Hurd 1971).) It has not been suggested that express statutory authority to allow private advertising on municipal property exists in any form. We are not suggesting we would reach a different result if O'Fallon were a home rule unit. For one reason, the power of such municipalities to own, regulate and exercise sovereign power over land outside their corporate limits must be expressly granted by the legislature. (*City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 338 N.E.2d 19 (1975); and see *People ex rel. City of Salem v. McMacken*, 53 Ill. 2d 347, 291 N.E.2d 807 (1972) (Mr. Justice Schaefer dissenting).) We are simply emphasizing that "Dillon's rule"—that local governments have only those powers specifically granted by constitution or statute or necessarily arising by implication from the power expressly granted (1 Dillon, Municipal Corporations 448 (5th ed. 1911))—continues to apply to non-home-rule units of local government.

The power of a municipal corporation to acquire land arises from section 2—2—12 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 2—2—12), but this power is limited to acquisitions pursuant to a legitimate corporate purpose. A municipal corporation may also acquire real estate *outside* its corporate limits for such a legitimate purpose.

(*People ex rel. City of Salem v. McMacken.*) Plaintiff does not contend the City of O'Fallon exceeded its power in acquiring the real estate or entering into the contract to supply water to the adjoining municipality as authorized by the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—124—1 *et seq.*). Rather, plaintiff contends the City of O'Fallon is without power to subject property owned by the municipality to a purely private use by St. Clair Square, Inc.

Defendant City of O'Fallon contends its ownership of the water tower is a proprietary function and, as such, it has the power to allow advertising on the same basis as a private corporation, if indeed the writings and markings constitute advertising. It is true, as defendants note, that a municipal corporation selling water for private consumption does so in its proprietary rather than its governmental capacity. (*City of West Frankfort v. United Association of Journeymen*, 53 Ill. App. 2d 207, 202 N.E.2d 649 (5th Dist. 1964); *Baltis v. Village of Westchester*, 3 Ill. 2d 388, 121 N.E.2d 495 (1954).) It is also true that while engaged in activities in a proprietary capacity, no distinction has been drawn between a municipality and a private corporation. This supposed equality has been applied most frequently to questions of liability for personal injuries arising from municipal operation of public utilities. (*Springfield Gas & Electric Co. v. City of Springfield*, 292 Ill. 236, 126 N.E. 739 (1920); *White v. City of Centralia*, 8 Ill. App. 2d 483, 131 N.E.2d 825 (4th Dist. 1956).) It has also been held that a municipal corporation is not immune from peaceful picketing (*City of West Frankfort v. United Association of Journeymen*) and must abide by general zoning ordinances. *Baltis v. Village of Westchester.*

■■ ■ A municipal corporation in the pursuit of its proprietary functions is not, however, equivalent to a private corporation in all respects. A municipal corporation is permitted to enter the commercial field solely to promote the welfare of its constituents, and "is no less a government because it owns and operates its own water system * * *." (*City of Chicago v. Tribune Co.*, 307 Ill. 595, 608, 139 N.E. 86, 90 (1923).) A municipal corporation holds its property in trust for the public, and its funds or property may not be given away or diverted to a private use (*Hackett v. Trustees of Schools*, 398 Ill. 27, 74 N.E.2d 869 (1947)); nor may it contract for the benefit of a private institution. (*Board of Education v. Alton Water Co.*, 314 Ill. 466, 145 N.E. 683 (1924).) In our opinion, this is true whether the property is held by the municipal corporation in its governmental capacity or its proprietary capacity. Because a city may not acquire property for other than corporate purposes, all property held by a municipal corporation is held for the welfare and benefit of its inhabitants, and is, in this sense, public property. As owner of public property, a municipal corporation is bound by the

constitutional mandates and legislative enactments regarding such property.

■■ Article VIII, section 1(a) of the Illinois Constitution of 1970 provides that "Public funds, *property* or credit shall be used only for public purposes" (emphasis added). While it is clear that the State and units of local government can lend their credit and resources to private entities so long as a public purpose is thereby served (see, *e.g., Cremer v. Peoria Housing Authority*, 399 Ill. 579, 78 N.E.2d 276 (1948); *Poole v. City of Kankakee*, 406 Ill. 521, 94 N.E.2d 416 (1950)), it is clear that public funds and property cannot be devoted to a purely private purpose. The Report of the Committee on Revenue and Finance makes clear that no change or enlargement of the existing law was intended by the inclusion of this provision in the Finance Article of the Constitution of 1970. 2 Record of Proceedings, Sixth Illinois Constitutional Convention 869-870; Revenue and Finance Committee Proposal No. 1, 7 Proceedings 2009.

Plaintiff argues that article IV, section 13 of the Illinois Constitution of 1970 is involved when the City permits its property to be used by St. Clair Square for private purposes. This provision provides that "the General Assembly shall pass no special or local law when a general law is or can be made applicable." The constitutional commentary in Smith Hurd Annotated Statutes states, "the new provision probably encompasses within its broad sweep most, if not all, of the explicit prohibitions of section 22 of article IV of the 1870 Constitution." This section prohibited the legislature from passing any law "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." Of course, the general assembly may not grant to a municipal corporation a power it does not possess (*Cremer v. Peoria Housing Authority; People ex rel. Healy v. Clean Street Co.*, 225 Ill. 470, 80 N.E. 298 (1907)); therefore, plaintiff contends that the action of the City of O'Fallon in allowing or suffering the advertising of St. Clair Square, Inc., to remain on the water tower in question is tantamount to granting an exclusive privilege to St. Clair Square in contravention of this constitutional prohibition. We need not pass on the validity of this contention in order to decide the case before us and decline to do so.

■■■ A city does, however, have the power to contract for the use of lands which it holds for corporate purposes, but which have not been formally dedicated to a particular public use. (*Center v. City of Benton*, 414 Ill. 107, 110 N.E.2d 223 (1953).) Where authorized by statute, a city may lease or license the use of its property, consistent with its character as municipally owned lands, provided the public interest is thereby subserved. *Poole v. City of Kankakee*, 406 Ill. 521, 94 N.E.2d 416 (1950); *People ex rel. Curren v. Wood*, 391 Ill. 237, 62 N.E.2d 809 (1945); *cf.*

*Lincoln Park Traps v. Chicago Park District*, 323 Ill. App. 107, 55 N.E.2d 173 (1944).

We believe the crucial test is whether the attempted use of the municipal property subserves the public interest and benefits a private individual or corporation only incidentally. If the private benefits are purely incidental to the public purposes of the act, then article VIII, section 1(a), of the Illinois Constitution is not violated. Because the constitutional provision is applicable with equal force to property held by a municipal corporation in either its proprietary or governmental capacity, the advertisement of St. Clair Square, Inc., on the water tower owned by the City of O'Fallon must subserve a public purpose or it is in violation of the Illinois Constitution, and the accepted rule of law governing the power and authority of municipal corporations in the regulation, management and use of public property. To allow municipal property to be put to a purely private use is uniformly held to be *ultra vires* the authority granted to municipalities.

No public purpose is furthered and no public benefit results from private advertising by St. Clair Square, Inc., upon the property of the City of O'Fallon. In *People ex rel. Healy v. Clean Street Co.*, 225 Ill. 470, 80 N.E. 298 (1907), the municipal corporation entered into a contract with a private individual for the placement of wastebaskets about the city. Under the contract, the private individual was given exclusive authority to lease the space on the wastebaskets for advertising purposes, the city receiving a portion of the revenue. The court held the private gain to the individual was not incidental to the public purpose of the contract as the pecuniary profits arose from the advertising in which no public purpose or public use was served. (See also *State ex rel. Belt v. City of St. Louis*, 161 Mo. 371, 61 S.W. 658 (1901).) In *State ex rel. Beck v. City of Hutchinson*, 144 Kan. 700, 62 P.2d 865 (1936), the city entered into a contract with a private corporation to install traffic signals without expense to the city. The private corporation was granted authority to lease a portion of the signs for advertising purposes. The court rejected the argument of public benefit in receiving traffic signals without expense as "the advertising sides of the structures have no relation to the public interest whatever. They are maintained by a private corporation, for its own private, pecuniary profit" and constitute a purely private use of public property. 144 Kan. 700, 702, 62 P.2d 865, 866.

■■ It is clear that no public purpose would be served by advertising in the instant case if, in fact, the words and writings are advertising, as plaintiff alleges. The benefit to St. Clair Square, Inc., would be purely for its private gain and would constitute a purely private use of public property in violation of the Illinois Constitution.

Plaintiff also cites the applicability of section 11—80—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—80—8) which he alleges the City of O'Fallon has violated. The statute reads as follows:

"The corporate authorities of each municipality may regulate the use of the space over the streets, alleys, *other municipal property*, and public places of the city, and upon payment of proper compensation, to be fixed by ordinance, may permit the use of the space more than 12 feet above the level of such streets, alleys, property, or places, *except for purely private* uses." (Emphasis added.)

The defendants contend the phrase "other municipal property" does not include a water tower located outside the corporate limits of the municipality and points out that division 80 of the Illinois Municipal Code is concerned solely with streets and public ways. Applying the rule of *ejusdem generis*, they argue further that the general language "other municipal property" must be construed to include only those things of the same kind as the specific words, streets and alleys. The historical note to this statute in Smith-Hurd Annotated Statutes discusses at length the legislative history of this section. It was apparently enacted in response to the Supreme Court's holding in *People ex rel. Burton v. Corn Products Refining Co.*, 286 Ill. 226, 121 N.E. 574 (1918), which held a municipality was without power to authorize the erection of a bridge over a city street to connect two parcels of property owned by a private business.

Regardless of its purpose, in *Gerstley v. Globe Wernicke Co.*, 340 Ill. 270, 172 N.E. 829 (1930), which was decided prior to the amendment to the section which added the concluding phrase, "except for purely private uses," it was argued that no statutory authority was needed to authorize municipal authorities to allow public uses of the space above streets and alleys and that the purpose of the statute was to allow private use of such spaces so long as the public easement of way was not obstructed. The court rejected this construction of the statute and further pointed out that the general assembly was without the power to authorize the private use of such public property.

If the statute is concerned solely with streets and alleys, the addition of the phrase "other municipal property" was meaningless and of no practical effect. A construction which ignores words in a statute, apparently operative, is to be avoided. As indicated, whether or not the statute would be here violated is unimportant to the decision we reach. The wording of the statute does reflect the continuing legislative policy that public property not be used for purely private purposes or private gain.

■■ The defendants' final contention, that an injunction is not the proper remedy, is without merit. The complaint alleges substantial injury

to the plaintiff. Plaintiff alleges it has suffered special damages as a result of the illegal use of municipal property. Plaintiff's proper remedy is to enjoin the continued improper use of public property. (*Cf. Schuler v. Board of Education*, 370 Ill. 107, 18 N.E.2d 174 (1938).) We are convinced that plaintiff as a taxpayer and resident of the City of O'Fallon has sufficient interest and standing to maintain an action to enjoin an illegal and improper use of municipal property. We consider it of no significance that the advertising might appear on the water tower by the sufferance or inaction of the city rather than pursuant to ordinance duly enacted as the city may not allow by inaction or acquiescence a use of municipally owned property that it could not authorize by ordinance or positive action of its elected officials.

■■ What we have said concerns plaintiff's cause of action against the City of O'Fallon. St. Clair Square, Inc., argues that the decision of the trial court as to it is correct and must be affirmed. We agree. The prayer for relief against St. Clair Square is not supported by the facts pleaded. The wording and emblem appearing on the water tower may have been placed there by St. Clair Square, but at that time the water tower was the private property of St. Clair Square. It is now owned by the City of O'Fallon and is beyond the control of St. Clair Square.

One other issue remains for consideration: may plaintiff seek money damages against the City of O'Fallon under the facts pleaded in addition to injunctive relief? We think not.

Plaintiff's complaint alleges the following three grounds for relief against the city: (1) that the advertising on the city water tower gives St. Clair Square an "unfair commercial advantage," (2) that to allow advertising on public property violates section 11—80—8 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—80—8) and (3) that the advertising diminishes the value of plaintiff's property and, therefore, constitutes a taking in violation of the due process and equal protection clauses of the Illinois and United States constitutions. On the last ground, the prayer is simply that the court declare the private use of public property be "illegal, void and unconstitutional."

Plaintiff's first ground, that the city has given to St. Clair Square an "unfair commercial advantage" clearly sounds in tort. We must, therefore, consider whether plaintiff's allegations state the elements of any tort action recognized in Illinois. Assuming that plaintiff states a valid tort action, we must then decide whether it is barred by any of the provisions of the Tort Immunity Act. Ill. Rev. Stat. 1973, ch. 85, par. 1—101 *et seq.*

Tortious interference with prospective economic advantage is an intentional tort. The law is clear that in order to recover under this theory, plaintiff must allege and prove that defendant purposely interfered with plaintiff's economic relations or advantage. More specifically, the

elements necessary to state a valid cause of action for tortious interference are: the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the interferor, intentional interference with the relationship or expectancy and resultant damage. *Titchener v. Avery Coonley School*, 39 Ill. App. 3d 871, 350 N.E.2d 502 (2d Dist. 1976); *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 300 N.E.2d 331 (3d Dist. 1973); 45 Am. Jur. 2d *Interference* §1 (1969); Restatement of the Law of Torts §766 and Comments (1939); W. Prosser, Law of Torts §130, at 952 (4th ed. 1971); see also *Doremus v. Hennessy*, 176 Ill. 608 (1898).

*City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 300 N.E.2d 331 (3d Dist. 1973), is the only Illinois decision involving an action against a municipality for tortious interference. In that case, the City of Rock Falls brought an action seeking authorization to demolish a building alleged to be dangerous and unsafe. The beneficial owner of the building counterclaimed against the city and its mayor, alleging that the mayor tortiously interfered with the owner's use of his property. The trial court dismissed the owner's counterclaim. The appellate court, however, held that the allegations in the owner's counterclaim of refusals to issue applications for various licenses, misstatements to prospective lessees concerning the availability of the property, threats concerning utilities, and other patent abuses of public office stated a cause of action for tortious interference. The differences between the counterclaim involved in *City of Rock Falls* and plaintiff's complaint in the instant cause are obvious. Plaintiff has not alleged anything which would indicate that the City of O'Fallon knew of plaintiff's business expectancies or intentionally interfered with them. For this reason, plaintiff has not stated a cause of action for tortious interference.

Although plaintiff has not alleged intentional interference with its business expectancies, it is arguable that the city, in the exercise of due care, should have known that injury to surrounding businesses would result from allowing St. Clair Square to advertise on a municipal water tower. We, therefore, consider whether plaintiff has stated a cause of action premised on negligence. Every tort action grounded in negligence requires the showing of a duty owed by defendant to plaintiff, a breach of that duty, that is, a negligent act or omission, which proximately causes a resulting compensable injury. *Browning v. Heritage Insurance Co.*, 33 Ill. App. 3d 943, 338 N.E.2d 912 (2d Dist. 1975).

Where the duty is owed to the public generally, no action lies on behalf of an individual for failure of performance, but where the duty is intended to benefit the individuals composing the public, failure to perform such duty gives rise to a cause of action in favor of anyone

injured by such failure. (65 C.J.S., *Negligence* §4(8), at 499 (1966).) In *Parker v. Brown*, 195 S.C. 35, 10 S.E.2d 625 (1940), a tax collector brought an action against the treasurer for loss of commissions resulting from the failure to issue executions. In holding that no cause of action was stated, the court held that the treasurer had a primary duty to issue executions for the benefit of the public, not to enable the tax collector to collect his fees and commissions. Here, the City of O'Fallon owed a duty to the general public to protect public property from subversion to purely private uses. This duty is not transferable to an individual in the event the city is negligent in performing the duty.

Is the action barred by the Local Governmental and Governmental Employees Tort Immunity Act? (Ill. Rev. Stat. 1973, ch. 85, par. 1—101 *et seq.*) The 1970 Illinois Constitution abolished the doctrine of sovereign immunity, "except as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, §4.

■■ While the Local Governmental and Governmental Employees Tort Immunity Act is concerned primarily with actions for personal injuries caused by the negligent conduct of municipal employees, sections 2—103 and 2—205 absolve local public entities and public employees from liability for injuries caused by the failure to enforce any law. "Injury," for purposes of the Act, includes "damage to or loss of property" (Ill. Rev. Stat. 1975, ch. 85, par. 1—204) and the definition of "law" encompasses constitutional provisions, statutes, ordinances, regulations and case law (pars. 1—205, 1—203). The complaint in the instant case indicates that the city simply accepted the water tower with the writings complained of appearing thereon. The conduct of the city was nothing more than a failure to enforce the constitutional and statutory provisions prohibiting the purely private use of public property and the city is protected under the Local Governmental and Governmental Employees Tort Immunity Act. Admittedly these particular sections of the Immunity Act have never been applied to similar facts. Typically, the action is brought against the city for failure to enforce laws directly relating to the public health, safety or welfare. In *Stigler v. City of Chicago*, 48 Ill. 2d 20, 268 N.E.2d 26 (1971), for example, an infant brought an action against the City of Chicago for injuries resulting from the ingestion of a lead based paint. The cause of action was based upon the city's failure to enforce a section of the Housing Code relating to good repair and habitable conditions. The court held that the city was not liable for failing to enforce the ordinance, saying that "This ordinance was enacted to benefit the public health and safety of the people of the city. Its enforcement was a governmental function rather than a ministerial or proprietary act. [It] did not give rise to any special duty to the plaintiff or to any particular

person different from the public at large." 48 Ill. 2d 20, 24, 268 N.E.2d 26, 29; see also *Chambers v. Palaggi,* 88 Ill. App. 2d 221, 232 N.E.2d 69 (1st Dist. 1967).

The judgment of the Circuit Court of St. Clair County is affirmed as to St. Clair Square, Inc., reversed as to the City of O'Fallon and the cause is remanded for further proceedings consistent with the opinion herein expressed.

Affirmed in part; reversed in part; remanded.

EBERSPACHER and JONES, JJ., concur.