O'FALLON DEVELOPMENT COMPANY, INC., Plaintiff-Appellee, *v.* THE CITY OF O'FALLON, Defendant-Appellee.—(ST. CLAIR SQUARE, INC., Intervenor-Appellant.)

Fifth District   No. 78-331

Opinion filed May 9, 1979.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, and Lewis, Rice, Tucker, Allen & Chubb, of St. Louis, Missouri (Richard E. Boyle and Dominic Troiani, of counsel), for appellant.

Joel V. Merkel, of O'Fallon, for appellee City of O'Fallon.

Frederick J. Hess, of Belleville, for appellee O'Fallon Development Company.

Mr. JUSTICE JONES delivered the opinion of the court:

St. Clair Square, Inc., appeals from an order for injunction of the circuit court of St. Clair County in favor of O'Fallon Development Co., Inc., plaintiff-appellee, enjoining the city of O'Fallon from continuing to display on a water tower owned by the city commercial advertising consisting of commercial emblems representing the St. Clair Square shopping center and the words, "St. Clair Square." The city of O'Fallon, against whom the injunction was to issue, chose not to pursue an appeal. St. Clair Square, Inc., thereupon sought and was granted the right to intervene and brings this appeal.

St. Clair Square is a regional shopping center located at the intersection of Interstate 64 and Route 159 in Fairview Heights. The land comprising the shopping center is owned by St. Clair Square, Inc., and Katheryn Evans. It is upon this land that the water tower in controversy is situated. An emblem representing the shopping center is painted on the east and west sides of the tower and is visible to motorists traveling either direction on Interstate 64; while the words, "St. Clair Square," are painted on the north and south sides of the water tower and can be viewed by drivers on Route 159.

In its amended complaint, O'Fallon Development Co. sought injunctive relief against the city of O'Fallon and St. Clair Square, Inc., to compel the removal of these emblems and writings from the water tower. The complaint alleges that the city of O'Fallon and St. Clair Square, Inc.,

entered into a contractual relationship whereby the city agreed to supply the water needs of the tenants in the St. Clair Square shopping center and that pursuant to this contractual relationship the city purchased the water tower from St. Clair Square, Inc. It further alleges that subsequent to its acquisition of the water tower the city made no effort to remove the emblems and writings which had been painted on the water tower by St. Clair Square, Inc. Finally, the complaint alleges that the continued display of the emblems and writings constitutes the use of public property for purely private purposes in contravention of section 11—80—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—80—8).

The city of O'Fallon and St. Clair Square, Inc., each moved to be dismissed from the complaint and both motions were granted. On appeal, this court reversed the trial court's order dismissing the city, holding that the complaint, as it applied to the city, stated a valid cause of action. We affirmed the dismissal of St. Clair Square, Inc., however, for the reason that the complaint did not seek any relief against St. Clair Square, Inc., since it did not allege that St. Clair Square, Inc., either owned the water tower or could control its use. *O'Fallon Development Co. v. City of O'Fallon* (5th Dist. 1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293.

The matter then proceeded to trial against the city. O'Fallon Development Co. introduced several documents into evidence in order to support its assertion that the city owned the water tower. The first document was a water service agreement between the city and St. Clair Square, Inc., which was entered into on December 27, 1972. Under the contract, the city was to provide water for the tenants of the shopping center. Furthermore, the city was to purchase all on-site improvements relating to the transmission and storage of water. Upon receipt of the purchase price, St. Clair Square, Inc., would convey all right, title and interest in the on-site improvements to the city, as well as perpetual easements and rights of way on the shopping center premises in order for the city to operate and maintain its improvements. The agreement was amended in 1974 to provide that the city furnish the water requirements of tenants in an additional 20 acres which were leased to St. Clair Square, Inc., by Katheryn Evans and made a part of the shopping center. The amendment also fixed the purchase price of the on-site improvements at $399,338.40.

The next exhibit was Ordinance No. 753 which was passed by the O'Fallon City Council and became effective July 15, 1974. Section 1 of the ordinance recited that $200,000 had already been paid to St. Clair Square, Inc., by the city for the on-site improvements, and section 8 of the ordinance authorized the appropriation and payment of the balance due on the on-site improvements, $199,338.40. The final document introduced

was an easement deed executed on September 16, 1974, by St. Clair Square, Inc., and Katheryn Evans. It provides in part:

"Grantors hereby grant and convey to Grantee [city of O'Fallon] the exclusive right and easement * * * to operate, maintain, replace, and/or repair the 'Equipment' * * *, all of which is hereby transferred to Grantee, in, over, through, under and across that part of the premises hereinafter designated as the 'Easement Area' * * *."

Equipment is defined as "all water transmission mains, water service lines, water main conduits, water storage tanks * * *."

Additionally, O'Fallon Development Co. introduced into evidence various newspaper advertisements promoting the products of retail stores doing business in the shopping center. Each advertisement depicts an emblem identical to those painted on the water tower. Jim Leget, general manager of the shopping center, testified that the emblem was used for promotional purposes by merchants in the shopping center. He also stated that lights surround the tower to illuminate it at night.

Testifying as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), Gary Mackey stated that he received no benefit from the city's purchase of the water tower either as an individual or in his capacity as mayor of the city of O'Fallon. He also said that the emblems and writings on the water tower serve no municipal function.

After taking the matter under advisement, the trial court entered an order which would enjoin the city of O'Fallon from continuing to display the emblem and writings on the tower. In conjunction with this order, the following findings of fact were submitted:

"a) That the Defendant, City of O'Fallon, is the owner of all right, title and interest in and to the on-site improvements consisting of water lines and water tanks. * * *

b) That the Defendant, City of O'Fallon, has a proprietary right to said water lines and water tower and the same does constitute public property.

c) That the wording 'St. Clair Square' and the logo on said water tower is advertising and constitutes a purely private use of public property.

d) That no public purpose is served by said advertising on the public property.

e) That as such public property the same cannot be devoted to a purely private purpose."

The city of O'Fallon declined to appeal from this order; whereupon St. Clair Square, Inc., filed a petition in the trial court to intervene in this cause alleging that its interest in the litigation mirrored that of the city's,

because both it and the city asserted that the emblem and the writings were properly displayed on the water tower. This petition was granted.

With respect to the issue of whether the city's continued sufferance of the emblems and writings on the water tower constituted an impermissible use of public property, and thereby justifying the injunction, the threshold question becomes whether the city's proprietary interest in the water tower was sufficient to deem the water tower public property.

St. Clair Square, Inc., contends that the city was merely granted an easement in and to the water tower and not all right, title and interest in it. They claim residual interests were retained at the time of execution of the easement deed which permitted their use of the equipment, including the water tower, in any manner that would not be inconsistent with, or interfere with, the city's operation and maintenance of the water system. They argue that the residual rights include the right to use the water tower for advertising purposes.

St. Clair Square, Inc., directs our attention to paragraph 1 of the easement deed in support of its contention. This paragraph states in part:

> "1.        *GRANT OF EASEMENT*
>    Grantors hereby grant and convey to Grantee [city of O'Fallon] the exclusive right and easement * * * to operate, maintain, replace and/or repair the *'Equipment'* * * * , *all of which is hereby transferred to Grantee*, in, over, through, under and across that part of the Premises hereinafter designated as the 'Easement Area' * * *." (Emphasis added.)

We are unable to discern anything in this language that would justify a finding that the asserted residual rights exist. Were we to uphold the contention of St. Clair Square, Inc., we would not only be distorting the plain meaning of the language used in the paragraph, but we would be construing the easement deed in a vacuum, totally oblivious to the prior agreements between the city and St. Clair Square, Inc., which were to be implemented by the easement deed.

It is apparent from the words, " 'Equipment' * * *, all of which is hereby transferred to Grantee," and from the absence of any language qualifying the grantee's proprietary interest in the equipment transferred, that the easement deed conveyed all right, title and interest in the equipment to the grantee, the city of O'Fallon. Since the word "Equipment," is defined to include water storage tanks, it follows that the city received all right, title and interest in the water tower.

Moreover, the intent of the grantors of the easement deed to convey full ownership in the water tower to the city is manifested by earlier agreements between the city and St. Clair Square, Inc. Under the water service agreement of December 27, 1972, the city was to purchase all

on-site improvements dealing with the transmission and storage of water; while St. Clair Square, Inc. was to provide title to the on-site improvements and the necessary easements to enable the city to operate and maintain these improvements. The amended water service agreement set the purchase price for the on-site improvements at $399,338.40. Ordinance No. 753 recited that the city had already paid $200,000 toward the on-site improvements and authorized the payment of the balance due or $199,338.40. Robert Bode, city clerk, testified that the city had paid the total amount due to St. Clair Square, Inc., in the form of two checks, one totaling $200,000 and the other $199,338.40. Two months after this ordinance was passed, the easement deed was executed.

In facilitating the water service agreement and its amendment the function of the easement deed was twofold: first, to convey to the city legal title to the on-site improvements, including the water tower (the city already had equitable title to these improvements after paying the purchase price); second, to convey access to these improvements for their operation and maintenance. These functions were carried out in paragraph 1 of the easement deed.

St. Clair Square, Inc., argues that paragraph 7 of the easement deed further supports its contention that the city received no more interest in the water tower than was necessary for its operation and maintenance. This paragraph provides:

"7. *Duration of Easement*

The Easement provided for in Section 2 is perpetual. However, if Grantee, at any given time, is no longer required to supply water services to the Premises and determines that all or any part of the Equipment need no longer be used by it to supply water service to the Premises, then it shall promptly so inform Grantors and on or before the date when Grantee ceases to so use the Equipment, it shall abandon such Equipment to Grantors and shall release of record so much of this Deed as pertains to (i) the Equipment in question and (ii) the Easement Area in which such Equipment is located."

We find to the contrary. This section implies that the easement deed transferred all right, title and interest in the water tower and other on-site improvements to the city of O'Fallon by requiring the city's total abandonment of the equipment as a condition precedent to St. Clair Square, Inc., acquiring any proprietary interest in it. Whatever the precise name or nature of this interest, legally vague in its creation, it is readily apparent that it affords St. Clair Square, Inc., no present interest in the equipment. The interest created is at most an expectation both conditional and remote.

■■ We hold that the water tower is owned by the city of O'Fallon and

is indeed public property, and we sustain the trial court's finding on this point.

Article VIII, section 1(a) of the Illinois Constitution of 1970 states that "[p]ublic funds, *property* or credit shall be used only for public purposes." (Emphasis added.)

> "While it is clear that the State and units of local government can lend their credit and resources to private entities so long as a public purpose is thereby served (see, *e.g., Cremer v. Peoria Housing Authority*, 399 Ill. 579, 78 N.E.2d 276 (1948); *Poole v. City of Kankakee*, 406 Ill. 521, 94 N.E.2d 416 (1950)), it is clear that public funds and property cannot be devoted to a purely private purpose." *O'Fallon Development Co. v. City of O'Fallon* (5th Dist. 1976), 43 Ill. App. 3d 348, 354, 356 N.E.2d 1293, 1299.

Section 11—80—8 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—80—8) reads as follows:

> "The corporate authorities of each municipality may regulate the use of space over the streets, alleys, *other municipal property*, and public places of the city, and upon payment of proper compensation, to be fixed by ordinance, may permit the use of the space more than 12 feet above the level of such streets, alleys, property or places, *except for purely private uses*." (Emphasis added.)

This statute reflects the public policy that public property may not be used for purely private purposes or gain. *O'Fallon Development Co. v. City of O'Fallon.*

In the case at bar, the trial court specifically found:

> "c) That the wording 'St. Clair Square' and the logo on said water tower is advertising and constitutes a purely private use of public property."

This finding is not challenged by St. Clair Square, Inc., on appeal, and we do not find it contrary to the manifest weight of the evidence. Newspaper advertisements and the testimony of Jim Leget established that the emblem and the writing "St. Clair Square," are integral components of the merchandising efforts of the St. Clair Square merchants. Moreover, there has been no showing that the city of O'Fallon ever benefited from its display of the emblems and writings on the water tower. (See *People ex rel. Healy v. Clean Street Co.* (1907), 225 Ill. 470, 80 N.E. 298.) Mayor Mackey testified that the advertising served no municipal function.

■■ For the reasons stated above, we hold that the display of the emblems and writings on the water tower constituted an improper use of public property for purely private purposes and that the injunction was properly ordered to issue.

Under the wording of the order for the injunction, the city of

O'Fallon is to be "enjoined against the improper use of city property." In view of the findings of fact which were submitted, the trial court obviously intended to order, and should have ordered, the issuance of the injunction in mandatory terms, compelling the city of O'Fallon to remove the emblems and writings from the water tower forthwith. That part of the order is amended accordingly, and in all other respects the order is affirmed.

Amended and affirmed.

G. MORAN, P. J., and KARNS, J., concur.