# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2008 Session

## MIKE ALLMAND v. JON PAVLETIC ET AL.

**Rule 23 Certified Question of Law**
**United States District Court for the Western District of Tennessee**
**No. 06-2128 DP     Bernice Bouie Donald, Judge**

---

**No. M2008-00459-SC-R23-CQ - Filed August 26, 2009**

---

WILLIAM C. KOCH, JR., J., dissenting.

This Court accepted a question of law certified by the United States District Court for the Western District of Tennessee regarding the authority of municipal utility boards to enter into employment contracts with at-will employees that provide for severance benefits if the employee is terminated without cause. While the Court has decided that "some form of severance compensation . . . [may be] permissible," it has concluded that the particular severance provisions in the two employment contracts at issue in this case are not enforceable. I respectfully disagree.

## I.

Mike Allmand is a long-time employee of the City of Ripley. Since 1980, he has managed Ripley Power and Light Company ("Ripley Power") under five employment contracts. In more recent times, he was also employed as the general manager of the Ripley Gas, Water and Wastewater Department ("Ripley Gas").

After a decision was made in mid-2003 to merge Ripley Power and Ripley Gas, Mr. Allmand and Ripley Gas entered into an employment contract on October 31, 2003, naming Mr. Allmand as the president and chief executive officer of Ripley Gas. Less than two months later, on December 11, 2003, Ripley Power and Mr. Allmand entered into a new employment contract naming him as the president and chief executive officer of Ripley Power. These dual employments were apparently intended to facilitate the planned merger of Ripley Power and Ripley Gas.

Mr. Allmand is an at-will employee. However, both his October 31, 2003 contract with Ripley Gas and his December 11, 2003 contract with Ripley Power were for multi-year terms. The Ripley Gas contract was for an eight-year term, and the Ripley Power contract was for a fourteen-year term. Both contracts also contained separate severance provisions that would be triggered unless Mr. Allmand "voluntarily abandoned his job" or "engaged in intentional misconduct." Under the Ripley Power contract, Mr. Allmand was entitled "to receive [his] annual salary, compensation, and all benefits for the remaining term of the Agreement." These payments would be made "pursuant to the Employer's normal bi-weekly pay schedule." Under the Ripley Gas contract, Mr. Allmand was entitled "to receive [his] annual salary, compensation, and all benefits for the

remaining term of the Agreement or a period of five years from the date of . . . termination, whichever is greater." This contract also required the severance payments to be made "pursuant to the Employer's normal bi-weekly pay schedule."

In July 2004, following a local election in April 2004, Ripley's Board of Mayor and Aldermen voted to abolish the Board of Public Utilities and to assume its oversight responsibilities. On November 7, 2005, the Board of Mayor and Aldermen terminated Mr. Allmand's contracts with Ripley Gas and Ripley Power. It abolished the position of president and chief executive officer of Ripley Gas and hired a new superintendent. The Board of Mayor and Aldermen also abolished the position of president and chief executive officer of Ripley Power but retained Mr. Allmand as the superintendent of the Electric Department.

On February 24, 2006, Mr. Allmand filed suit in the United States District Court for the Western District of Tennessee. His complaint contained a claim for breach of his employment contracts and sought his "severance pay benefits" as part of his damages. One of the Ripley defendants' defenses to Mr. Allmand's breach of contract claim was that both the October 31, 2003 and the December 11, 2003 contracts were void because they conflicted with Mr. Allmand's status as an at-will employee.

On July 23, 2007, the District Court granted the Ripley defendants a partial summary judgment regarding Mr. Allmand's employment contracts. The court held that these contracts "are voidable as to all provisions contingent upon a definite term of employment." However, the court also determined that the contracts were valid "[w]ith respect to those provisions not contingent upon a definite term of employment, such as compensation, retirement, and annual/sick leave." When the parties disagreed over the application of this ruling to the severance provisions in Mr. Allmand's contracts, the District Court filed an order of clarification on August 8, 2007, stating:

> The Court finds that the issue of severance is not precluded by the Court's holding that the Board lacked the authority to contract for a term of years. The issue of severance is not inconsistent with an at will contract. Accordingly, the issue of severance is not rendered moot by the Court's earlier order.

At this juncture, the Ripley defendants filed a motion seeking reconsideration, permission to pursue an interlocutory appeal to the United States Court of Appeals for the Sixth Circuit, or certification of the issue to this Court in accordance with Tenn. Sup. Ct. R. 23. The District Court chose the certification option. In its amended certification order entered on September 5, 2007, the District Court certified the following question of law:

> Whether a municipal utility board has the authority to enter into a contract with an appointed city official who serves at the will and pleasure of the Board of Mayor and Aldermen whereby the utility board contracts to continue to pay the official's salary for a multi-year time period [8 and 14 years] after the official's employment is terminated.

As I construe this order, the District Court has requested this Court to address only one question of law – the question regarding whether employment contracts with at-will employees of municipal utilities boards may include severance provisions such as those found in Mr. Allmand's contracts.[1] I would answer that question in the affirmative.

In its answer to the District Court's certified question, the Court states that "some form of severance compensation" for at-will employees of local governments might be permissible but then holds that the particular severance provisions in Mr. Allmand's two employment contracts are not only "inconsistent with the at-will nature of the employment" but also do not authorize an award of severance. The Court bases this conclusion on the following considerations: (1) the fact that the "practical effect" of the contracts "establish[es] precisely the type of long-term obligation that the City's charter forbids"; (2) that the severance provisions in Mr. Allmand's employment contracts "have few of the characteristics associated with a traditional severance package"; (3) that Mr. Allmand's contracts mention "severance payment" only once between them; and (4) that the severance provisions have the "practical effect" of liquidated damages provisions.

I have concluded that the severance provisions in Mr. Allmand's contracts are entirely consistent with severance provisions generally used in both the public and private sectors and that they cannot be equated with liquidated damages provisions because, as this Court noted in *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 97 (Tenn. 1999), they are payable even when the employment contract is not breached. With regard to the "onerous requirement[s]" of these contracts, I would hold that the validity and enforceability of a contract does not generally rest on whether one of the contracting parties has made a bad deal. *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009).

## II.

In its most general sense, severance pay includes any payment "made by an employer to an employee for permanently terminating the employment relationship primarily for reasons beyond the control of the employee." 1 Howard A. Specter & Matthew W. Finkin, *Individual Employment Law and Litigation* § 5.26, at 327 (1989) (quoting Everett D. Hawkins, *Dismissal Compensation* 5 (1940)). In the private sector, neither federal nor state law requires employers to provide severance pay;[2] thus it is purely a matter of contract between the employer and the employee. Thus, contractual severance pay provisions should be construed and enforced using the traditional canons of contract construction.

---

[1] Because the District Court had already determined that Tennessee law does not permit the multi-year terms in Mr. Allmand's contracts, it did not request this Court to address that question. The validity of the multi-year employment provisions and the severance provisions are separate and distinct issues.

[2] Gerard P. Panaro, *Guidelines for Severance Pay*, Nov./Dec. 2006, at 7, *available at* 12 No. 6 HR Advisor: Legal and Practical Guidance 7 (Westlaw) (hereinafter "Panaro"). It is not uncommon for government employers to enact statutes or ordinances requiring or permitting severance payments to their employees.

Severance agreements arise in essentially two contexts. First, they are negotiated either at the beginning of employment or when an employee is offered a new position with different or expanded responsibilities. In this circumstance, the agreement serves as an inducement for the employee to accept the employment or to continue his or her employment with new duties and responsibilities. Second, severance agreements are negotiated after an employer has decided to terminate an employee.[3] In this circumstance, the agreement serves as a means to avoid controversy and litigation over the termination. This case involves the first type of severance agreement – one that was entered into as an inducement for an employee to assume additional responsibilities. When Mr. Allmand's employment agreements were negotiated and signed, the Ripley employers had not decided to terminate him.

During the past three decades, employment contracts containing severance provisions have become a normal part of executive recruitment in the private sector. Executives began insisting on severance provisions because they provided added protection. John Tarrant, *Perks and Parachutes: Negotiating Your Executive Employment Contract* 13 (1985) (hereinafter "Tarrant"). Now, many companies and executives prefer "to establish and fix in advance the amount the company will be required to pay and the executive will be entitled to receive in the event of a termination by the company without cause or resignation for good reason." Robert Salwen, *2001 Guide to Executive Employment Contracts* 26 (2000) (hereinafter "Salwen").[4] A recent study that examined 100 executive employment contracts found that 98% of these contracts included severance provisions for executives who are terminated without cause before the expiration of the contract. Salwen, at 52 tbl.2-27.

Severance provisions are now considered to be one of the six basic ingredients of any executive employment contract.[5] Tarrant, at 23. Severance payments may take the form of "salary continuation" (continued payments equal to full salary or a portion thereof for a specified period of time), or a lump sum payment on the date of termination, or a combination of both.[6] Salwen, at 26; Jeffrey S. Klein et al., *Thirty-Fifth Annual Institute on Employment Law, Drafting Employment Agreements* 175, 186 (PLI Oct. 2006). Whether the severance payments are paid in installments or in a lump sum is generally a matter of negotiation between the employer and the employee. Panaro, at 7.

---

[3] This Court recognized this type of severance agreement in *Guiliano v. Cleo, Inc.*, 995 S.W.2d at 97. While the Court in *Guiliano v. Cleo, Inc.* did not explicitly mention the first type of severance agreement, the opinion, reasonably interpreted, does not categorically exclude the existence of other types of severance agreements.

[4] *See also* Michael B. Snyder, *Benefits Guide* § 9:45 (June 2009), *available at*, BNGD § 9:45 (Westlaw) (hereinafter "Snyder") (reporting that a recent survey of 124 large employers by Hewitt Associates found that they provided severance benefits to their executives).

[5] The other five basic ingredients are: (1) the term of the contract, (2) the duties of the job, (3) the compensation, (4) the benefits, and (5) the grounds and procedure for termination. Tarrant, at 23.

[6] For terminations without cause, the period of time for the payment of severance benefits may be the remainder of the term of the contract. Often, however, the employer and the employee will agree on a fixed period of time for the payment of severance benefits. Salwen, at 27. Salary continuation payments are frequently paid in accordance with the employer's regular payroll periods. Snyder § 9:45.

A recent survey of 100 executive employment agreements reported that 36% of the employers based the severance pay on the executive's base salary, while 64% of the employers based the severance pay on the executive's base salary plus bonuses. Salwen, at 53. The same survey reported severance payout periods of between 3 and 3.5 years for chief executive officers in 41% of the contracts, and payment periods of 5 years or more in 11% of the contracts. For other executives, the survey reported severance payout periods of between 3 and 3.5 years in 29% of the contracts, and payout periods of 5 years or more in 13% of the contracts. Salwen, at 54 tbl.2-33.

The inclusion of severance provisions in employment contracts has migrated from the private sector to the public sector. These provisions are used to attract skilled employees to serve in at-will positions, *Village of Oak Lawn v. Faber*, 880 N.E.2d 659, 668 (Ill. App. Ct. 2007), and to retain key employees who might seek employment elsewhere, *City of Omaha v. City of Elkhorn*, 752 N.W.2d 137, 148 (Neb. 2008). Employment contracts that contain a severance provision provide important protections for managers in government service who are in the position of "serving at the pleasure of a governing body with the possibility of being dismissed for any reason at any time." *Sizemore v. City of Madras*, No. 02-74-KI, 2005 WL 273006, at *9 (D. Or. Feb. 2, 2005).

While the issue has not been exhaustively litigated, courts have concluded that a provision for severance pay in a government employee's employment contract is not inconsistent with an employee's at-will status. Thus, at-will government employees who have a severance pay provision in their employment contract may still be terminated at any time for any reason. However, the government employer must honor its contractual obligation to pay severance benefits if the employee is otherwise entitled to them. *McGregor v. Bd. of Comm'rs*, 674 F. Supp. 858, 861 (S.D. Fla. 1987); *Stephenson v. City of Claycomo*, 246 S.W.3d 22, 30 (Mo. Ct. App. 2007) (holding that a municipality owed a fire chief severance benefits equal to five years of his gross salary); *Myers v. Town of Plymouth*, 522 S.E.2d 122, 124 (N.C. Ct. App. 1999) (upholding a severance provision in an employment contract even though it "may have deterred" the municipality from terminating the employee). In these circumstances, the provisions in a government employee's employment contract regarding the length of the term of employment and severance benefits are not in conflict and may be given separate effect. *Dice v. City of Montesano*, 128 P.3d 1253, 1258 (Wash. Ct. App. 2006).

### III.

Mr. Allmand's employment contracts contained severance provisions. Even though there is no standard severance provision, the substantive and procedural aspects of the provisions in Mr. Allmand's employment contracts essentially mirror the severance provisions used by other corporations and governmental employers. Thus, I must respectfully disagree with the Court's conclusion that the severance provisions in Mr. Allmand's employment contracts "have few of the characteristics associated with a traditional severance package." Because the courts must construe contracts based on their substance, there is little room for reasonable doubt that the contractual provisions at issue are, as found by the District Court, severance provisions.

For the purpose of this appeal, we may comfortably presume that the District Court correctly decided that the provisions in Mr. Allmand's employment contracts providing for a multi-year term of employment were invalid because they conflicted with Mr. Allmand's status as an at-will

employee. However, the fact that these provisions are invalid does not undermine the remaining provisions in the contracts. *See Taylor v. Butler*, 142 S.W.3d 277, 287 (Tenn. 2004) (holding that a void arbitration clause does not invalidate the remainder of the contract); *Bratton v. Bratton*, 136 S.W.3d 595, 602 (Tenn. 2004) (recognizing that the unenforceability of one provision of a severable contract does not excuse the enforcement of the remainder of the contract). Accordingly, the validity of the severance provisions in Mr. Allmand's contracts must stand or fall on its own.

One final question remains – whether an otherwise valid contract can be undermined on the ground that enforcing the contract will cause financial hardship on one of the parties. Under Tennessee law, the answer to that question is resoundingly "no." Tennessee law favors allowing competent parties to strike their own bargains, 21 Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6, at 17 (2006), and also favors enforcing written contracts. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Accordingly, it is not our role to assay the wisdom of a contract or to relieve a party from its contractual obligations simply because they have proved to be burdensome. *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d at 814.

There is no rule of law or policy that dictates applying these general contract principles to government contracts with any less rigor than they are applied to contracts between private parties. I agree with the Court's observation that while requiring the Ripley defendants to honor their contractual commitments in Mr. Allmand's employment contracts may be onerous, that fact alone does not provide a sufficient basis for invalidating the severance provisions in his employment contracts.

For these reasons, I respectfully dissent.

_____
WILLIAM C. KOCH, JR., JUSTICE